**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **MELISSA G. WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:15-cv-02111-STA-dkv** |
| | ) | |
| **E. I. DU PONT DE NEMOURS AND** | ) | |
| **COMPANY, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**
**ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE WITHOUT PREJUDICE**

Before the Court is Plaintiff Melissa G. Williams's Motion for Summary Judgment (ECF No. 65) and Defendant E. I. du Pont de Nemours and Co., Inc.'s Cross-Motion for Summary Judgment (ECF No. 66), both filed on February 19, 2016. Each side has responded in opposition to the opposing party's Motion, and the moving parties have filed reply briefs. For the reasons set forth below, Plaintiff's Motion is **DENIED**, and Defendant's Motion is **GRANTED**.

## BACKGROUND

On February 16, 2015, Plaintiff filed a Complaint alleging claims of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. Both parties now seek judgment as a matter of law on all of Plaintiff's claims for relief. A jury trial was set in this case for May 23, 2016. However, Plaintiff sought a continuance of the trial date due to the fact that Defendant terminated her employment earlier this year. Plaintiff has filed a charge of discrimination with the EEOC and is awaiting a right-to-sue letter to add claims to her judicial

complaint based on her termination.  Defendant did not oppose the continuance and agreed that an amendment of Plaintiff's pleadings would serve the interests of judicial economy.  Defendant did request that the Court proceed to consider the parties' Rule 56 Motions while Plaintiff exhausts her administrative remedies.  The Court finds then that the parties' Motions for Summary Judgment are now ripe for determination.

As an initial matter, Plaintiff's Motion for Summary Judgment is not well-taken. Plaintiff's Motion for Summary Judgment consists of the following: a statement of undisputed material facts, a short recitation of the factual history of this case, and a summary of federal and Tennessee case law on the standard for summary judgment.  Plaintiff's memorandum in support of her Motion states in conclusory fashion, "For the following reasons, the plaintiffs asks that this Court conclude that the facts and claims submitted to this Court are not in dispute and therefore she is entitled to Summary Judgment as a matter of law."

Federal Rule of Civil Procedure 7(b) states that a "request for a court order must be made by motion" and "state with particularity the grounds for seeking that order."[1]  Rule 56(a) requires a party moving for summary judgment to "identify[] each claim or defense—or the part of each claim or defense—on which summary judgment is sought" and "show[] that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law."[2]  Here Plaintiff's Motion for Summary Judgment fails under both Rule 7(b) and Rule 56(a).  Plaintiff never cites case law or legal tests applicable to her specific causes of action, never applies the law to the facts of her case, never proposes any conclusions of law to be drawn from a correct application of the law to the undisputed facts, and never argues why she is actually entitled to

---

[1] Fed. R. Civ. P. 7(b).

[2] Fed. R. Civ. P. 56(a).

judgment as a matter of law. As the Sixth Circuit has remarked, "[d]istrict courts read motions, not minds, and nothing requires them to distill any possible argument which could be made based on the materials before them."[3] Because Plaintiff's Motion fails to state with particularity the reasons supporting her Motion for Summary Judgment and otherwise fails to show the reasons she is entitled to judgment as a matter of law, Plaintiff's Motion for Summary Judgment is **DENIED**.

Pursuant to Local Rule 56.1(a), both parties have prepared separate statements of facts "to assist the Court in ascertaining whether there are any material facts in dispute."[4] A fact is material if the fact "might affect the outcome of the lawsuit under the governing substantive law."[5] A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6] For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite particular parts of the materials in the record and show that the materials fail to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact.[7]

The non-moving party at summary judgment is required to respond to the moving party's statements of fact "by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3)

---

[3] *Siler v. Webber,* 443 F. App'x 50 (6th Cir. 2011) (quoting *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990) (quotation marks omitted)).

[4] Local R. 56.1(a).

[5] *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

[6] *Anderson,* 477 U.S. at 248.

[7] Fed. R. Civ. P. 56(c)(1).

demonstrating that the fact is disputed."[8]  Additionally, the non-moving party may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[9]  Where the non-moving asserts that a genuine dispute of material fact exists, the non-moving must support his or her contention with a "specific citation to the record."[10]  If the non-moving fails to demonstrate that a fact is disputed or simply fails to address the moving party's statement of fact properly, the Court will "consider the fact undisputed for purposes" of ruling on the Motions.[11]  Under Rule 56 of the Federal Rules of Civil Procedure, the Court "need consider only the cited materials" but has discretion to "consider other materials in the record."[12]

The Court notes that Plaintiff has submitted a statement of undisputed facts to accompany her Motion for Summary Judgment.  Despite Plaintiff's failure to show why the Court should grant her summary judgment, the Court has considered Plaintiff's statement of undisputed facts as part of its analysis of the evidence at this stage of the proceedings but only to the extent that Plaintiff has properly cited evidence and included the evidence in the record.  Many of Plaintiff's fact contentions either include no citation to the record or lack support in the evidence Plaintiff has made part of the record.  Other allegations are outside of the scope of the claims alleged in Plaintiff's

---

[8] Local R. 56.1(b).

[9] Fed. R. Civ. P. 56(c)(2).

[10] Local R. 56.1(b).

[11] Fed. R. Civ. P. 56(e)(2); *see also* Local R. 56.1(d) ("Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment.").

[12] Fed. R. Civ. P. 56(c)(3).

Complaint. The Court finds that for purposes of Defendant's Motion for Summary Judgment, there is no genuine dispute as to the following material facts with appropriate citations to the record, unless otherwise noted.

## I. Plaintiff's Employment History with DuPont

Plaintiff Melissa Williams worked as a full service employee at Defendant E. I. du Pont de Nemours and Co., Inc.'s ("DuPont") Memphis, Tennessee chemical manufacturing plant from 2004 to March 2, 2016. (Def.'s Statement of Undisputed Fact ¶ 1.) DuPont's Memphis plant is divided into three operational areas: Hydrogen Cyanide ("HCN"), Solid Cyanide ("NaCN"), and Oxone. (*Id.* ¶ 2.) Plaintiff initially worked in NaCN before transferring to HCN in 2010. (*Id.* ¶ 3.) Plaintiff worked as an operator in HCN and received the top rate of pay available to operators at DuPont's Memphis plant until her termination in March 2016. (*Id.* ¶ 4.)

## II. DuPont's Anti-Discrimination Policies

DuPont has a "Code of Conduct" and a "Respect for People" policy by which all employees are bound. (*Id.* ¶ 5.) Both the Code of Conduct and the Respect for People policy include DuPont's policies related to diversity and inclusion, equal opportunity and non-discrimination, people treatment, non-retaliation, and freedom from harassment, among other things. (*Id.*) The stated objective of the Code of Conduct and Respect for People policy is to "[s]trongly encourage those who believe they have been subjected to harassment, retaliation, discrimination, or mistreatment, to report any such incidents for appropriate management action." (*Id.* ¶ 6.) To that end, the Code of Conduct and Respect for People policy both detail DuPont's reporting and investigation process for reported mistreatment. (*Id.* ¶ 7.) Employees who believe they have been treated in a manner that violates the Code of Conduct or Respect for People policy may report the incident to their supervisor or, if they are not comfortable going to

their supervisor, may report the incident to any member of site management, to human resources, or to DuPont's corporate office in Delaware via DuPont's anonymous corporate hotline and/or website for reporting complaints. (*Id.*)

Regardless of the method by which complaints are made, all complaints are automatically sent to DuPont's human resources department, and the investigation process is initiated. (*Id.* ¶ 8.) The on-site human resources department determines whether to investigate the issue itself or whether to bring in corporate investigators to conduct the investigation. (*Id.*) In either case, the investigators interview witnesses identified by the complainant as having relevant information related to the complaint and may interview additional people as the investigation progresses. (*Id.* ¶ 9.) At the conclusion of the investigation, the investigators draft a report summarizing their interviews and stating their findings and submit that report to human resources. (*Id.* ¶ 10.) Human resources communicates the findings to the complainant and, if the complainant's allegations are substantiated, DuPont takes appropriate corrective action against the offending party. (*Id.*) "This action may range from discussing the conduct with the offender and procuring a commitment to end such actions, to reassignment of the offender, or to disciplinary action, including possible termination." (*Id.*) The process for reporting and investigating people treatment incidents is clearly communicated to employees during training and is also posted at various spots throughout the workplace and on the human resources website. (*Id.* ¶ 11.)

Plaintiff adds that she asked Fannie Booker a plant shift supervisor at DuPont's Memphis plant for the phone number to report harassment some time in late 2013. (Pl.'s Resp. to Def.'s Statement of Fact ¶ 7.) Plaintiff called the number Booker had given her and discovered that the number was a sex hotline. (*Id.*) When Plaintiff informed Booker about the nature of the phone

number, Booker reported it, and the number was subsequently changed or redirected.  (*Id.*)[13]

### III. Plaintiff's Claims Against James Dortch

In 2006, Plaintiff was interviewed by corporate investigators during DuPont's investigation into a female co-worker's allegation that a male co-worker in NaCN, James Dortch, had behaved inappropriately towards her.  (Def.'s Statement of Undisputed Fact ¶ 12.)  During the course of the interview, Plaintiff brought up her own complaints related to Dortch.  (*Id.*)  In response the investigators expanded the scope of the investigation to include Plaintiff's allegations.  (*Id.*)  At the conclusion of the investigation, the investigators substantiated Plaintiff's claims that Dortch had "tease[d]" her and "made inappropriate comments to others regarding her." (*Id.* ¶ 13.)  Plaintiff adds that Dortch once kissed her on the mouth and once pulled her down to sit on his lap.  (Pl.'s Resp. to Def.'s Statement of Fact ¶ 13.)

The investigative report recommended taking "some level of corrective action" against Dortch.  (Def.'s Statement of Undisputed Fact ¶ 13.)  DuPont was unable to do so, however, because Dortch retired before the conclusion of the investigative process. (*Id.*)  DuPont referred Plaintiff to a counselor through DuPont's Employee Assistance Program ("EAP") for resources, support, and education on how to address workplace issues in the future.  (*Id.* ¶ 14.)  The parties disagree over whether DuPont ever communicated the results of the investigation to Plaintiff. (*Id.*) Plaintiff never saw Dortch again. (*Id.*)  Following the incident with Dortch, Plaintiff did not report any issues to management until 2010 and did not report any people treatment issues until

---

[13] Plaintiff also cites deposition testimony from Dawn Hughes, a manager at DuPont's Memphis plant, where Hughes allegedly testified that a complaint may not always be taken to human resources, depending on the nature of the complaint.  (Pl.'s Resp. to Def.'s Statement of Fact ¶ 8.)  Plaintiff cites page 119 of Hughes's deposition for support but failed to make that page of the transcript part of the record.  Therefore, the Court declines to consider Plaintiff's fact claim as part of its summary judgment analysis.

2013.  (*Id.* ¶ 15.)[14]

## IV. Transfer from NaCN to HCN

In approximately 2010, Plaintiff filed a union grievance alleging that she had been "overlooked for training" for a job in the NaCN control room in favor of a male co-worker, John Ruff. (*Id.* ¶ 16.)  Plaintiff's supervisor in NaCN, Pauline Brown, explained to Plaintiff that she needed to gain more experience in her current job before training for another job within NaCN. (*Id.*)  Shortly thereafter, Plaintiff successfully bid on a job in HCN.  (*Id.* ¶ 17.)  Upon her transfer to HCN, Plaintiff was required to undergo training for three jobs—field, lab, and tank farm—in order to be considered "fully qualified" in HCN. (*Id.* ¶ 18.)  Plaintiff completed the requisite training in approximately four months, at which point she began receiving the top rate of pay. (*Id.*)

Plaintiff worked in HCN without incident until December 31, 2012, when she complained that DuPont had failed to refund her 2012 purchased vacation time. (*Id.* ¶ 19.)[15] DuPont has a vacation buying plan whereby employees may purchase extra vacation time at the beginning of each year. (*Id.* ¶ 20.)  Employees must use their purchase vacation time by the end of the year, or, alternatively, they must arrange for reimbursement of unused purchased vacation time by December 1 of that year.  (*Id.*) If the employee does not properly arrange for reimbursement by December 1, they lose these hours and the money paid for them.  (*Id.*) DuPont's Benefit Determination Review Team—which is located in Arkansas, not at the

---

[14] Plaintiff claims that she reported many issues subsequent to the Dortch investigation; however, Plaintiff has not specified what incidents she reported, shown that she reported the incidents prior to 2010, or shown that she reported any people treatment issues prior to 2013, as Defendant claims.  The Court finds Defendant's statement of fact to be undisputed then.

[15] Plaintiff responds that she and another male employee were written up for an incident in 2011 and denied a bonus as a result of the infraction.

Memphis plant—responded to Plaintiff's complaint on January 2, 2013, informing her that because she did not complete the requisite election for reimbursement of unused vacation time before December 1, 2012, her request for reimbursement was denied. (*Id.* ¶ 21.) Plaintiff appealed the decision, explaining that she had never attempted reimbursement before and therefore did not know how to do it correctly. (*Id.*) The DuPont Benefit Appeals Committee affirmed the Review Team's decision on March 1, 2013. (*Id.*) That same year, DuPont's Benefit Determination Review Team also denied an appeal for reimbursement from Aaron Penn, a male employee. (*Id.* ¶ 22.)

In 2012, DuPont hired several new employees to the HCN area. (*Id.* ¶ 23.) In May 2013, Plaintiff wrote a letter to her human resources manager, Kenneth Williams, to report that she was being picked on and harassed by some of her new co-workers. (*Id.*) Plaintiff stated that she had never had a problem with her co-workers before and had only started having problems when the "new guys" were hired. (*Id.*)[16] Plaintiff and Williams met in June 2013, at which point Plaintiff became upset and emotional. (*Id.* ¶ 24.) Williams referred Plaintiff to EAP and to DuPont's medical department ("plant medical") for counseling and support. (*Id.*) Plant Medical sent Plaintiff home, and she remained on short-term disability leave for approximately three weeks. (*Id.*) When she returned to work in July 2013, Mr. Williams asked her if she needed any further assistance, and Plaintiff declined. (*Id.*)[17]

---

[16] Plaintiff argues that Defendant has taken her letter out of context. Plaintiff testified during her deposition that she experienced a number of problems with her co-workers, not just the "new guys." Be that as it may, the Court finds that Defendant has correctly quoted the letter in its statement of undisputed fact. Plaintiff's letter to her human resources manager (ECF No. 66-11, Page ID 667) speaks for itself.

[17] Plaintiff argues that the materials cited do not support Defendant's characterization of the meeting between Plaintiff and Kenneth Williams. The Court agrees with Plaintiff that

DuPont has a Disability Procedure that explains in detail its policy that applies when employees "are unable to work due to on-occupational disabilities (illness or injury) or are unable to perform their normal assignment due to disability-related restrictions." (*Id.* ¶ 25.) Under this policy, employees are to timely report their disability or injury to their supervisor and to Plant Medical. (*Id.*) Plant Medical examines the employee and determines "if they are able to return to their normal work assignment, to a restricted work assignment, or if they are to be sent home." (*Id.*) "Plant Medical's opinion is final with respect to any employee's ability to return to work." (*Id.*) Upon the employee's return to work, Plant Medical determines their work restrictions, if any, and the employee's supervisor determines if there is any available restricted work in the area. (*Id.*) These work restrictions vary based on the individual and his or her symptoms and work responsibilities. (*Id.*) Plaintiff was placed on disability leave and work restrictions (also known as "light duty") at various points between 2012 and 2015. (*Id.* ¶ 26.) Plaintiff received disability payments from DuPont during these instances. (*Id.*)

From 2010 to early 2014, Plaintiff worked in the HCN field and lab jobs. (*Id.* ¶ 27.) In early 2014, Plaintiff requested to move to the tank farm, another job within HCN. (*Id.*) This request was granted based on Plaintiff's seniority at the plant. (*Id.*) Shortly after transferring to the tank farm, Plaintiff asked her supervisor Gary Fish for training on other HCN-area jobs (namely, trade waste and aminonitriles ("AN")). (*Id.* ¶ 28.) Fish told Plaintiff she needed to gain more experience and learn more about her new job in the tank farm before being trained on another job. (*Id.*) As supervisor, Fish is responsible for determining who receives training and when. (*Id.* ¶ 29.) He primarily bases this determination on how long an employee has been in their particular job (not the employee's seniority in the area), but he also considers the needs of

Williams testified about his June 2013 meeting with Plaintiff but never actually mentioned Plaintiff's letter to him as part of the meeting. Plaintiff's other objections are without merit.

the shift or of the particular employee. (*Id.*) An employee with disability-related work restrictions may receive priority for training if they are unable to perform their typical job assignments. (*Id.*) For example, two of Plaintiff's co-workers, George Bryson and Robin McGluen, both received training in trade waste while on light duty because they were unable to perform their normal jobs in the field for an extended period of time. (*Id.*)[18]

Fish is not responsible for assigning employees to work overtime; rather, the overtime schedule is maintained by non-management employees. (*Id.* ¶ 30.) In HCN, the employee responsible for overseeing overtime is LaTonya King, Plaintiff's female co-worker. (*Id.*) Overtime is assigned to the person with the lowest number of overtime hours. (*Id.*) Plaintiff regularly worked overtime between 2012 and 2014, except during those periods where she was placed on disability-related work restrictions that prevented her from doing so. (*Id.* ¶ 31.)

In February 2014, DuPont sent corporate investigators Paul Patterson and Angie Caillier to the Memphis plant to investigate complaints made by one of Plaintiff's co-workers. (*Id.* ¶ 32.) Though Plaintiff was identified as a witness, during her interview, she brought up her own complaints. (*Id.*) Accordingly, the investigators initiated a formal investigation into Plaintiff's complaints that she was "being harassed and retaliated against by supervisors and overlooked for training and being blocked from overtime," that she had been subjected to sexual innuendos from co-workers who made comments about "tak[ing] one for the team," and that she had been called a "dumb ass" by a co-worker. (*Id.*) After interviewing fifteen witnesses, the investigators were unable to corroborate Plaintiff's claims that she was denied training or called a "dumb ass" by a coworker. (*Id.* ¶ 33.) The investigators did corroborate that there had been "conversations in the

---

[18] Plaintiff disputes Defendant's contention that Fish had discretion about which employee received training. But Plaintiff cites no evidence to support her claims to the contrary. Therefore, the Court finds that this fact is undisputed for purposes of summary judgment.

control room about being a member of the team or being a team player" but could not corroborate that such comments were sexual in nature. (*Id.*)

The investigators stated their conclusions as follows: "There is insufficient [evidence] of disrespectful treatment or exclusion of [Plaintiff] by her co-workers. The team also found no purposeful exclusion of Plaintiff by her co-workers with intent to cause her anguish." (*Id.*) The investigators further found: "It appears there is an uncomfortable work environment in the HCN Group and that all employees are uncomfortable interacting with [Plaintiff] because of [her] unpredictable volatility. Other females did not feel the HCN work environment was disrespectful." (*Id.* ¶ 34.) Plaintiff adds that the investigators never interviewed Cynthia Etheridge, who would have corroborated statements from other employees about "taking one for the team." (Pl.'s Resp. to Def.'s Statement of Fact ¶ 33.)[19] Plaintiff filed a charge of discrimination with the EEOC in April 2014 alleging many of the same complaints raised in the internal investigation. (*Id.* ¶ 35.)

On May 30, 2014, Plaintiff complained to her plant shift supervisor, Richard Thornton, that she had been harassed by several male and female co-workers. (*Id.* ¶ 36.) Specifically, Plaintiff stated that she became upset when her production manager, Janette Parker, "gave her work-related direction on the process of loading railcars in the HCN Tank Farm;" that two or three female co-workers "harassed her by cluttering-up the HCN Women's Locker Room" while she was changing into her uniform prior to her shift;" and that a male co-worker, Dave Faulker, yelled at her for not performing her job duties in a timely manner. (*Id.*) During a subsequent

---

[19] Plaintiff also objects to statements contained in the investigative report as hearsay. The internal investigative reports are properly considered at summary judgment "not to prove their truth, . . . but to demonstrate the state of mind and motive of" Defendant in its decisionmaking. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598 (6th Cir. 2007) (citation omitted).

meeting with Thornton, Plaintiff began "crying excessively," so Mr. Thornton referred her to Plant Medical. (*Id.* ¶ 37.) Plant Medical placed her on short-term leave, and she returned to work on June 17, 2014. (*Id.*) Upon her return to work, Plaintiff requested a change in her shift schedule to enable her to adjust to the medication that she had been prescribed while on leave, and DuPont accommodated her request. (*Id.*)

In November 2014, DuPont sent corporate investigators Walter Connor and Sharon Ford to the Memphis plant to investigate Plaintiff's claim that she was treated disrespectfully by a co-worker, David Faulkner, while performing work in the tank farm in October 2014. (*Id.* ¶ 38.) Plaintiff alleged that Faulkner "raise[d] his voice and . . . argu[ed] with her about how the job was to be done." (*Id.*) Plaintiff also reasserted her claims that she had been denied training by Fish, that she did not receive the help necessary to perform her job, and that she been "denied overtime opportunities by LaTonya King, a control room operator who handles the schedule for overtime assignments." (*Id.*)

After interviewing sixteen witnesses, the investigators were unable to substantiate any of Plaintiff's claims. (*Id.* ¶ 39.) The investigators did substantiate that Faulkner had raised his voice at Plaintiff but found that this was done because of loud "ambient plant noise" and was not "done with any intent to be disrespectful." (*Id.*) The investigators also found that "[i]n every situation, help has been provided to [Plaintiff] to complete the work required albeit there have been times when the extra help did not arrive specifically at the time [Plaintiff] requested it." (*Id.*) As for training, the investigators found that "[t]here was no evidence presented that Gary Fish ever[] specifically denied her training opportunities. [Plaintiff] could not identify training that she had not had, although she complained she did not feel trained to the extent that she wanted it." (*Id.*) Finally, the investigators found that "[b]ased upon the interviews of LaTonya

King and Gary Fish, it is clear that [Plaintiff] doesn't know or understand the overtime procedure in place at the plant. . . . It is not known whether [Plaintiff] has ever read the [written overtime procedure] after being advised to do so by LaTonya King and Gary Fish." (*Id.*)

The investigators concluded: "It is clear that all of the interviewees believe that if they question or challenge [Plaintiff] on how work is to be done, it becomes an argument or confrontation more often than not initiated by [Plaintiff.] All interviewees described [Plaintiff] as hard working, dedicated, conscientious, and one who wants to do the right thing the right way, but she insists on getting her way and makes people feel nervous. Not one person told us they had refused or, would ever refuse, to work with her. However, they are all conscious of the fact that when they do work with her, if they question her and how she wants to do things, it will often lead to a confrontation. It is our finding that [Plaintiff] has received the training required for her position, has been assigned to a more experienced mentor in David Faulkner for on the job training, has received the help she needed to do the work, and has received overtime opportunities when she was appropriately positioned to receive them." (*Id.*)

Plaintiff filed the instant Complaint on February 16, 2015, stating claims of gender discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964. (*Id.* ¶ 41.) The remaining facts addressed in Defendant's statement of undisputed facts concern events that occurred after Plaintiff filed suit and which are still subject to ongoing administrative procedures. As such, the Court declines to consider these facts or the merits of any cause of action based on these facts at this time.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."[20]  The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide."[21]  In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party,[22] and the "judge may not make credibility determinations or weigh the evidence."[23]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[24]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[25]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[26]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."[27]

When determining if summary judgment is appropriate, the Court should ask "whether

---

[20] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009).

[22] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[23] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[24] *Celotex*, 477 U.S. at 324.

[25] *Matsushita*, 475 U.S. at 586.

[26] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[27] *Lord v. Saratoga Cap., Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[28]  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[29]

### ANALYSIS

Defendant seeks judgment as a matter of law on Plaintiff's claims for gender discrimination, hostile work environment, and retaliation.  The Court considers each claim in turn.

### I. Gender Discrimination

Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual . . . because of [his] race, color, religion, sex, or national origin."[30] Plaintiff has the burden to establish a prima facie case of sex discrimination by adducing evidence of the following: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) similarly situated non-protected employees were treated more favorably."[31]  If the plaintiff can carry her burden and establish a *prima facie* case of discrimination, "the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action."[32]

---

[28] *Anderson*, 477 U.S. at 251–52.

[29] *Celotex*, 477 U.S. at 322.

[30] 42 U.S.C. § 2000e–2(a)(1).

[31] *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) (quoting *Peltier v. United States,* 388 F.3d 984, 987 (6th Cir. 2004)).

[32] *Id.* (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008)).

"[T]he employer's burden is satisfied if [it] simply explains what [it[ has done or produc[es] evidence of legitimate nondiscriminatory reasons."[33]   At the third stage of the burden-shifting analysis, the plaintiff must come forward with evidence that the defendant's proffered reason is pretext for unlawful discrimination.[34] At the pretext stage, the plaintiff's burden "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination."[35]

Defendant concedes that Plaintiff is a member of the protected class but argues that Plaintiff was not subject to any adverse employment action.  Defendant has addressed a number of facts in its opening brief and asserted that none of them amount to an adverse action.  Plaintiff answers in her response brief that she suffered three distinct adverse employment actions: denial of training, denial of overtime opportunities due to a lack of appropriate training, and being held back from assuming her new position in liquid cyanide for one year so that she could train her replacement.  Because Plaintiff has not addressed any of the other issues raised by Defendant in its opening brief, the Court confines its analysis to the three distinct actions, which Plaintiff claims were materially adverse.

"An adverse employment action in the context of a Title VII discrimination claim is a materially adverse change in the terms or conditions of employment because of the employer's actions."[36] "Termination, decrease in wage or salary, change in title, diminished material

---

[33] *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

[34] *Jackson*, 814 F.3d at 776.

[35] *Id.* (quoting *Burdine*, 450 U.S. at 256).

[36] *Kuhn v. Washtenaw Cnty.,* 709 F.3d 612, 625 (6th Cir. 2013) (internal quotation marks omitted).

responsibilities, or a material loss of benefits are all examples of a materially adverse change."[37] A denial of training that deprives an employee of increased pay qualifies as an adverse employment action.[38] Training to perform additional duties, "even if other employees were allowed to attend the training, is not an adverse employment action" unless "failure to attend the training would result, or has resulted, in any demotion, loss of pay, loss of responsibility, or other materially adverse effect."[39] The Sixth Circuit has noted that the loss of overtime pay can constitute an adverse employment action.[40] Plaintiff alleges that Defendant denied her the opportunity to engage in cross-training, that is, job training to perform additional duties within her area of the Memphis plant. Plaintiff further alleges that she would have qualified for more overtime opportunities in Defendant's Memphis plant had she received the training other similarly situated employees received. Plaintiff's denial of training claim and denial of overtime claim, therefore, overlap to a large degree.

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has not shown that she actually was denied any specific opportunity for training resulting in a loss of pay or overtime. During her tenure in NaCN between 2006 and 2010, Plaintiff asserts without any specifics that Defendant denied her training. Plaintiff has cited no evidence of being denied overtime while she worked in NaCN. Plaintiff points only to a single incident in 2010 when Defendant allowed a male employee with less seniority, John Ruff, to receive training. Plaintiff

---

[37] *Mensah v. Mich. Dept. of Corrections*, 621 F. App'x 332, 334 (6th Cir. 2015).

[38] *Reed v. Procter & Gamble Mfg. Co.*, 556 F. App'x 421, 429–30 (6th Cir. 2014) (citing *Clay v. United Parcel Serv., Inc.,* 501 F.3d 695, 710 (6th Cir. 2007)).

[39] *Creggett v. Jefferson Cty. Bd. of Educ.*, 491 F. App'x 561, 567 (6th Cir. 2012).

[40] *Lentz v. City of Cleveland,* 333 F. App'x 42, 57 (6th Cir. 2009) (citing *Broska v. Henderson,* 70 F. App'x 262, 267–68 (6th Cir. 2003)).

filed a grievance over the Ruff incident and ultimately elected to bid on and transfer to a position in HCN, which she received. However, Plaintiff has not shown how the Ruff incident caused her to suffer a loss of pay or otherwise amounted to an adverse employment action. Therefore, the Court holds that Plaintiff has failed to prove this specific claim.

Likewise, Plaintiff has not shown that Defendant denied her training or overtime during her tenure in the HCN area of the plant between 2010 and 2014. Plaintiffs' testimony about the denial of her requests for training shows that Plaintiff had to learn certain tasks on the job without the benefit of training sessions.[41] Plaintiff's testimony does not connect this lack of training to a loss of pay or opportunity for overtime. The undisputed evidence at summary judgment shows that a non-managerial employee LaTonya King assigned overtime to the person with the lowest number of overtime hours. Other undisputed evidence shows that Plaintiff regularly worked overtime between 2012 and 2014, except during times when she had disability-related work restrictions. Plaintiff has not come forward with any other evidence to show that she was denied overtime while she worked in HCN or that the training she sought and was denied would have allowed her to get more overtime. Plaintiff has made unsupported assertions about Fish admitting "that being cross-trained allows an operator to make more money" and cancelling overtime she was scheduled to work but without including any evidence in the record to support her claims.[42] Because Plaintiff cannot show that she lost income or suffered any other diminished responsibility due to a lack of training or related lack of overtime, the Court holds that Plaintiff has not shown that the alleged lack of training or overtime constitutes an adverse employment action.

---

[41] *See* Williams Dep. 127:1-128:18, Sept. 22, 2015 (ECF No. 81-5).

[42] Pl.'s Resp. in Opp'n 7 (ECF No. 81-2).

This leaves Plaintiff's allegation that she suffered an adverse action when Defendant required her to work in her old position for one year while she trained her replacement before moving to her new position in HCN. The Court holds that just as with her other claims, Plaintiff has not shown how this situation was an adverse employment action. There is no proof that Plaintiff received less pay or benefits or an inferior job title with less meaningful responsibilities during this interim or that she lost the opportunity for bonuses, overtime, or promotion as a result of the delay. Even if she had, Plaintiff has not shown that Defendant treated similarly situated employees more favorably.[43] Defendant's Motion for Summary Judgment must be granted to Plaintiff's gender discrimination claims for these reasons alone.

Assuming for the sake of argument that Plaintiff could make out a prima facie claim of gender discrimination, Plaintiff has adduced no evidence to show that Defendant took these actions against her on the basis of her gender. Defendant asserts that the overtime and training assignments were made according to policy. Plaintiff can establish pretext that Defendant's given reasons were pretextual under any of three different showings: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action."[44] Plaintiff has attempted to make none of these showings at summary judgment. Therefore, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's gender

---

[43] Plaintiff argues in her brief that "Defendant has not disputed that Plaintiff was held back, nor produced any evidence to prove that she was not treated differently in being held back a year to train (really re-train) her replacement." Pl.'s Resp. in Opp'n 8 (ECF No. 81-2). Plaintiff's argument reverses the burden of proof on this issue. Plaintiff has the burden to come forward with proof of a similarly situated male employee receiving more favorable treatment. Defendant does not have the burden to prove anything at the prima facie stage.

[44] *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 895 (6th Cir. 2016) (citing *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012)).

discrimination claims.

## II. Hostile Work Environment

Defendant next seeks summary judgment on Plaintiff's claim for hostile work environment. Title VII prohibits discrimination that is "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment."[45] In order to establish a *prima facie* case of hostile work environment based on race, a plaintiff must demonstrate the following elements: (1) that he is a member of a protected class; (2) that he was subjected to harassment, either through words or actions, based on her gender; (3) that the harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an objectively intimidating, hostile, or offensive work environment; and (5) there exists some basis for liability on the part of the employer.[46] The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment."[47] Conduct that is "merely offensive" is insufficient to support a hostile work environment claim.[48]

Defendant concedes at summary judgment that Plaintiff is a member of a protected class and can show that she was subject to unwelcome harassment. But Defendant argues that Plaintiff cannot prove that the harassment was because of her gender or that the harassment was severe or pervasive. With respect to whether the alleged harassment had the effect of

---

[45] *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

[46] *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009) (citation and quotation marks omitted)).

[47] *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998).

[48] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

unreasonably interfering with plaintiff's work performance and creating an objectively intimidating, hostile, or offensive work environment, an employee is not required to show that the alleged harassment was both subjectively and objectively severe and pervasive.[49] Rather, she need only show that "the [work] environment is objectively hostile and the harassment is subjectively severe and pervasive."[50] Whether Plaintiff subjectively viewed the alleged harassment as severe and pervasive "is quintessentially a question of fact."[51] In other words, Plaintiff's subjective view of the harassment is not a question the Court can reach at the summary judgment stage.

The Court can consider whether a reasonable person could have found the work environment to be objectively hostile. The Court must look at the totality of the circumstances to analyze whether the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.[52] Appropriate factors to consider include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[53] "Isolated incidents. . . , unless extremely

---

[49] *Gallagher*, 567 F.3d at 274.

[50] *Id.*; *see also Williams v. Gen. Motors Corp.*, 187 F.3d 553, 568 (6th Cir. 1999) ("[t]he focus of the objective/subjective inquiry should remain on (1) whether a reasonable person would find the environment objectively hostile, and (2) whether the plaintiff subjectively found the conduct 'severe or pervasive.' ").

[51] *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006) (citation and internal quotation marks omitted).

[52] *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 707 (6th Cir. 2007) (citation and quotation makes omitted).

[53] *Id.* (quoting *Harris,* 510 U.S. at 23).

serious, will not amount to discriminatory changes in the terms or conditions of employment."[54] Furthermore, only incidents that occurred because of a plaintiff's protected status are properly considered in the context of a claim of hostile work environment.[55]

The Court finds it unnecessary to decide whether the harassment Plaintiff suffered was due to her gender or was objectively hostile. The Court will assume without deciding that Plaintiff can prove both of these elements. Fatal to Plaintiff's prima facie case for hostile work environment is her failure to create a triable issue about Defendant's liability. It is well-settled that employers are not automatically liable for sexual harassment perpetrated by their employees.[56] An employer's liability for sexual harassment committed by a non-supervisory co-worker "depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action."[57] In other words, the employer is liable "if its response manifests indifference or unreasonableness."[58] The employer's response is appropriate if it is "reasonably calculated to end the harassment."[59] The Sixth Circuit has commented that "[w]hen an employer responds with good-faith remedial

---

[54] *Bowman v. Shawnee St. Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

[55] *Howard v. Bd. of Educ. of Memphis City Schs.*, 70 F. App'x 272, 282 (6th Cir. 2003).

[56] *Gallagher*, 567 F.3d at 274–75 (citing *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, (1998); *Faragher*, 524 U.S. at 775) (other citations omitted)).

[57] *Id.* (citation omitted).

[58] *Id.* (citation omitted).

[59] *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 340 (6th Cir. 2008) (quotation omitted).

action, we cannot say that the employer has itself committed an act of discrimination."[60] An appropriate response "may include promptly initiating an investigation."[61]

Here it is undisputed that Defendant had a policy prohibiting sexual harassment and a system in place to allow employees to report harassment. Pursuant to the policy, Defendant conducted more than one investigation into Plaintiff's allegations of harassment. Other than her 2006 complaint against James Dortch, which is not at issue in this case, Plaintiff has made allegations of severe or pervasive harassment only against her co-workers, not her supervisors.[62] Plaintiff refers to one of her supervisors Gary Fish walking by her without acknowledging her presence, greeting her on several occasions with "ho, ho, ho," and "often" referring to her as "nub" because of her partially amputated finger.[63] Viewing the evidence in the light most favorable to Plaintiff, Fish's behavior was rude and certainly unbefitting a manager. But "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[64] Neither will the "sporadic use of abusive language, gender-related jokes, and occasional teasing."[65] Perhaps

---

[60] *Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 747 (6th Cir. 2008) (quoting *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 873 (6th Cir. 1997)).

[61] *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 311 (6th Cir. 2016).

[62] Plaintiff's proof about Defendant's phone hotline for harassment complaints being an inappropriate sex hotline does not appear to implicate any specific managerial employee. In fact, it is not clear to the Court what actually happened. Defendant claims that Plaintiff's only proof about the episode is her own testimony and a post-it note with an incorrect telephone number written on it. In any event, accepting Plaintiff's testimony about the episode as true, the hotline incident while clearly sexual in nature was an isolated offense. *Bowman*, 220 F.3d at 463.

[63] Pl.'s Resp. in Opp'n 17-18 (ECF No. 81-2); Williams Dep. 134:5-18.

[64] *Cleveland v. S. Disposal Waste Connections*, 491 F. App'x 698, 708 (6th Cir. 2012).

[65] *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 352 (6th Cir. 2005) (quoting *Faragher*, 524 U.S. at 788).

more importantly, even assuming that Fish's comments to Plaintiff were severe and pervasive, Plaintiff has not shown that Fish's alleged harassment was based on Plaintiff's gender. Therefore, the Court concludes that Plaintiff has not shown that her supervisors engaged harassment.

As for Plaintiff's claims for coworker harassment, there is no evidence that the harassment was based on Plaintiff's gender or that management had reason to be aware of hostility besides the incidents Plaintiff reported and human resources investigated.[66] While Plaintiff's brief refers repeatedly to harassment from co-workers, the proof viewed in a light most favorable to Plaintiff does not show that the harassment was sexual in nature or because of Plaintiff's gender. There is also no evidence that Defendant engaged in unreasonable delays in conducting its investigations or displayed an indifference to Plaintiff's internal complaints.[67] Plaintiff questions the thoroughness and legitimacy of Defendant's investigations but without citation to probative evidence to show that Defendant's responses to her complaints "manifest[ed] indifference or unreasonableness."

Plaintiff argues in her brief that the corporate investigations were flawed in several ways. For example, according to Plaintiff, the investigators did not speak with all of the relevant witnesses or accept all of Plaintiff's notes about the incidents being investigated. Plaintiff has the right to have Defendant take reasonable action to remedy harassment; however she "may not

---

[66] *Cf. Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999).

[67] *Smith*, 813 F.3d at 311 (holding that the reasonableness of the employer's "total inaction for ten days, where Defendant knew that [a harassing supervisor] had touched Plaintiff," the supervisor had a history of inappropriate harassment, and had been warned "that further complaints would result in termination," was a question for the jury).

dictate an employer's action against a co-worker."[68] While it is true that the investigations did not always corroborate Plaintiff's complaints, the fact remains that Defendant continued to investigate all of Plaintiff's allegations as they arose. For purposes of summary judgment, Plaintiff has not shown that Defendant did not have an honest belief in the conclusions reached by the investigators.[69] Because Plaintiff has failed to carry her burden as to this element, Defendant's Motion for Summary Judgment is **GRANTED** as to her hostile work environment claims.

## III. Retaliation

Defendant finally seeks judgment as a matter of law on Plaintiff's claim for retaliation. "[S]evere or pervasive supervisor harassment following a sexual-harassment complaint can constitute retaliation for the purposes of a Title VII action."[70] Plaintiff does not allege any single, discrete act of retaliation but a systematic pattern of harassment and abuse from supervisors and coworkers triggered by her participation in Defendant's investigation of James Dortch in 2006.[71] The legal standard of liability for retaliation by a supervisor differs from the

---

[68] *Blankenship*, 123 F.3d at 874.

[69] *Michael*, 496 F.3d at 598 ("Michael's disagreement with the facts uncovered in Caterpillar's investigation does not create a genuine issue of material fact that would defeat summary judgment 'as long as an employer has an honest belief in its proffered nondiscriminatory reason.'").

[70] *Akers v. Alvey*, 338 F.3d 491, 498 (6th Cir. 2003).

[71] Plaintiff's brief refers to one instance where she received a disciplinary write-up, which would arguably constitute a discrete adverse action. Pl.'s Resp. in Opp'n 14 (ECF No. 81-2). However, Plaintiff testified that the incident happened in 2005 or 2006 and mentioned that there was documentation of the incident, presumably establishing the exact date Defendant took the adverse action against her. Plaintiff has not made the document part of the record, and her testimony about the incident fails to show that the write-up occurred after her protected complaints about Dortch in 2006 or any other protected activity. Without proof showing that she received the write-up *after* engaging in protected activity, Plaintiff has not shown that her

legal standard of liability for retaliation by a coworker. As such, the Court considers each theory separately.

## A. Retaliation – Supervisor Harassment

To make out her claim of supervisor harassment, Plaintiff must establish the following elements of a *prima facie* case of retaliation: (1) she engaged in activity protected under Title VII; (2) her exercise of her protected rights was known to Defendant; (3) an adverse employment action was subsequently taken against her or she was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.[72] Defendant concedes at summary judgment that Plaintiff took a number of actions protected by Title VII's anti-retaliation provision. This element of her claim is not in dispute. But Defendant argues that Plaintiff cannot show her supervisors took adverse action against her because none of the actions actually dissuaded her from continuing to make protected complaints.

In the context of retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[73] The Sixth Circuit has described this as "a more liberal definition" than the proof of discrete

___

activity was the "but for" cause of the disciplinary action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) (holding that Title VII retaliation "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer").

[72] *Fuhr v. Hazel Park School Dist.*, 710 F.3d 668, 674 (6th Cir. 2013) (citing *Garner v. Cuyahoga Cnty. Juvenile Court,* 554 F.3d 624, 639 (6th Cir. 2009)).

[73] *Id.* (citing *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006)).

adverse action to support a discrimination claim.[74]   As such, retaliation under Title VII sets a

"relatively low bar" to prove a materially adverse action.[75]

The Court need not reach the merits of Defendant's argument about whether Plaintiff was

actually dissuaded from engaging in protected activity.   Plaintiff maintains that her supervisor

Gary Fish engaged in systematic harassment in retaliation for Plaintiff's protected complaints

against Dortch in 2006.   But as the Court has already noted, Plaintiff's allegations against Fish

appear to consist of his "sporadic use of abusive language" and "occasional teasing."[76]   Fish's

actions were arguably not so severe and pervasive as to alter the conditions of Plaintiff's

employment.   Perhaps more importantly, Plaintiff has not shown a causal connection between

Fish's comments to her and her protected activity.   As is clear from Plaintiff's brief, her theory

of the case is that management and her coworkers retaliated against Plaintiff after her complaints

against James Dortch in 2006.   Plaintiff testified that Fish made the habitual "ho, ho, ho"

comments in 2013.   Plaintiff has failed to offer any proof of a causal connection between her

participation in the Dortch investigation in 2006 and Fish's comments in 2013.    And Plaintiff

has now shown when Fish began to call her "nub."[77]   As previously noted, without proof of

when an alleged act of retaliation occurred, Plaintiff cannot show that her protected activity was

---

[74] *Michael*, 496 F.3d at 596.

[75] *Id.*

[76] *Clark*, 400 F.3d at 352 (quoting *Faragher*, 524 U.S. at 788).

[77] Defendant argues that the proof shows Fish made his "nub" comment in 2004. Defendant cites for support Plaintiff's responses to written interrogatories where she answered that Fish called her "nub" and asked her to hold up her fingers in 2004.  Def.'s Mot. for Summ. J., ex. S (ECF No. 66-20).  Plaintiff asserts in her brief that Fish made the comment repeatedly from 2006 to 2015.  However, Plaintiff has failed to support her claim with any proof.  The deposition testimony Plaintiff cites for support does not indicate when Fish made the comment at all.  Pl.'s Resp. in Opp'n 18 (citing Williams Dep. 134:7-135:7).

28

the "but for" cause of the retaliation. Therefore, Defendant's Motion for Summary Judgment is **GRANTED** as to this issue.

## B. Retaliation – Coworker Harassment

This leaves Plaintiff's claim for retaliation based on unwelcome harassment from her coworkers. "In appropriate circumstances, Title VII permits claims against an employer for coworker retaliation."[78]  In order to hold an employer liable for a coworker's harassment, Plaintiff must prove that (1) the coworker's retaliatory conduct was sufficiently severe so as to dissuade a reasonable worker from making or supporting a charge of discrimination; (2) supervisors or members of management had actual or constructive knowledge of the coworker's retaliatory behavior; and (3) supervisors or members of management have condoned, tolerated, or encouraged the acts of retaliation, or have responded to the plaintiff's complaints so inadequately that the response manifests indifference or unreasonableness under the circumstances.[79]

For purposes of summary judgment, the Court will assume without deciding that Plaintiff can show her coworker's retaliatory conduct was sufficiently severe so as to dissuade a reasonable worker from making or supporting a charge of discrimination.  Plaintiff has cited many, many instances of mistreatment from her coworkers, running the gamut from unwelcome teasing to implied threats of not assisting Plaintiff in case of a life-threatening, on-the-job emergency.  The Court will further assume that Plaintiff can show that supervisors or members of management had actual or constructive knowledge of Plaintiffs' coworkers' behavior.  As already discussed in the context of Plaintiffs' hostile work environment claim, Plaintiff made a

---

[78] *Laster v. City of Kalamazoo*, 746 F.3d 714, 732 (6th Cir. 2014) (quoting *Hawkins v. Anheuser–Busch, Inc.,* 517 F.3d 321, 346 (6th Cir. 2008)).

[79] *Id.* (citing *Hawkins*, 517 F.3d at 347).

number of internal complaints to Defendant about the treatment she received from her coworkers.

Plaintiff's retaliation claim fails at summary judgment for lack of proof that Defendant condoned, tolerated, or encouraged the acts of retaliation or responded to Plaintiff's complaints so inadequately that the response manifested indifference or unreasonableness under the circumstances. Defendant conducted six separate investigations to ferret out possible discrimination and even sent investigators from DuPont's corporate offices to the Memphis plant to interview Plaintiff and other witnesses, showing that Defendant took Plaintiff's claims seriously.[80] This is was not a situation where the employer was aware of the allegations of harassment but undertook no formal investigation or failed to interview any witnesses at all "to determine whether the complaints were valid or who was responsible for the mistreatment."[81] Plaintiff has produced no evidence from which a reasonable juror could find that Defendant's efforts "manifest[ed] indifference or unreasonableness under the circumstances."[82] Therefore,

---

[80] *Jackson v. Quanex Corp.,* 191 F.3d 647, 663 (6th Cir. 1999) ("Significantly, a court must judge the appropriateness of a response by the frequency and severity of the alleged harassment.") (citation omitted).

[81] *Cf. Waldo v. Consumers Energy Co.*, 726 F.3d 802, 817 (6th Cir. 2013) (employer failed to undertake formal investigation, interview the complaining employees coworkers, identify who was responsible for the mistreatment, or report internal complaints to upper management); *see also Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 312 (6th Cir. 2016) (holding a triable issue existed over the employer's response to complaint of harassment where the harassing coworker had a history of sexual harassment in the workplace, and the employer did not separate the harassing coworker from the plaintiff, suspend the harassing coworker pending an investigation, or initiate its investigation in a timely manner); *Jackson*, 191 F.3d at 663–64 (holding that when the employer knew about complaints but "made no effort to discover the perpetrators" of harassment, the employer's response was not reasonably calculated to end the harassment). Plaintiff makes a number of arguments criticizing the thoroughness of the investigations. However, none of the evidence cited by Plaintiff supports her characterizations of the investigations or demonstrates that Defendant was indifferent to her complaints.

[82] *Laster*, 746 F.3d at 732.

Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's coworker retaliation claim.

## IV. Remaining Issues

Defendant also seeks judgment as a matter of law on Plaintiff's claim for punitive damages. The Court finds it unnecessary to reach this issue to decide Defendant's Motion for Summary Judgment. The Court has concluded that Plaintiff's substantive claims for relief fail, and the Court has granted the parties an extension of the schedule and a continuance of the trial so that Plaintiff can exhaust the administrative remedies for her termination and pursue additional discovery concerning her termination. Therefore, the Court reserves its ruling on the issue of punitive damages, until such time as Plaintiff has exhausted her termination claim and conducted additional discovery on it.

Likewise, the Court finds it unnecessary to reach Defendant's Motion to Exclude Plaintiff's Expert Witnesses (ECF No. 61). Defendant seeks the exclusion of two opinion witnesses disclosed by Plaintiff, arguing that Plaintiff failed to comply with the Federal Rules of Civil Procedure. Plaintiff has responded in opposition to Defendant's Motion. The Court finds it unnecessary to decide the Motion at this juncture of the case. The gravamen of Defendant's Motion is that Plaintiff failed to meet the deadlines for the disclosure of her experts under the Rule 16(b) case management scheduling order. However, subsequent to the filing of Defendant's Motion to Exclude, Plaintiff moved for an extension of the scheduling order, including an extension of her deadline to disclose her expert information. While the Court expresses no opinion on whether Plaintiff's previous disclosures complied with the Federal Rules of Civil Procedure, the Court finds that the extension of the deadline for expert discovery renders

Defendant's Motion to Exclude moot.  Therefore, the Motion is **DENIED** but without prejudice to raise the issue in a subsequent motion.

## <u>CONCLUSION</u>

Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claims for gender discrimination, hostile work environment, and retaliation, and Plaintiff's Motion is **DENIED**.  Defendant's Motion to Exclude Plaintiff's Experts is **DENIED** without prejudice.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  September 28, 2016.